**NOT FOR PUBLICATION**                                    **CASE CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                          :
AARON C. LONDON,                          :
                                          :
                    Petitioner,           :    CIVIL ACTION NO. 07-3437 (JAP)
                                          :
        v.                                :    **OPINION**
                                          :
UNITED STATES OF AMERICA,                 :
                                          :
                    Respondent.           :
_____:

      Before the Court is *pro se* Petitioner, Aaron C. London's ("Petitioner") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Respondent, United States of America ("Respondent") opposes the motion.  The Court resolves this motion without oral argument, as permitted by Fed. R. Civ. P. 78.  For the reasons set forth below, the Court denies Petitioner's motion.

## I.     Background

      On February 19, 2002, a federal Grand Jury charged Petitioner with armed bank robbery, in violation of 18 U.S.C. § 2113(a); assault in the course of an armed bank robbery, in violation of 18 U.S.C. § 2112(d); and, brandishing a firearm in the course of an armed bank robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 924(c)(1)(C)(i).

      At trial, Petitioner was represented by counsel.  After the jury was sworn-in and the government presented its evidence against Petitioner, the parties came to an agreement whereby

Petitioner pled guilty to a two-count superseding information, which charged him with armed robbery, in violation of 18 U.S.C. § 2113(a) and (d), and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  The information, unlike the indictment, did not include a charge for the violation of 18 U.S.C. § 924(c)(1)(C)(i).  On April 30, 2002, Petitioner was advised of his rights and waived prosecution by indictment.  Petitioner, instead, consented to proceed by way of information.  The Court accepted Petitioner's guilty plea and dismissed the jurors.

On November 18, 2002, Petitioner was sentenced to a term of imprisonment of ninety-six months on Count I and a term of eighty-four months on Count II.  Additionally, the Court sentenced Petitioner to a supervised release of five years following his release from incarceration, a special assessment of $200.00, and ordered Petitioner to pay Commerce Bank, the financial victim of the crime $3,113.24 in restitution.  Petitioner was sentenced according to the Sentencing Guidelines stipulated in his plea agreement, which comported with the Sentencing Reform Act of 1984.  Petitioner waived his right to file an appeal and challenge of the sentence.

The final judgment was filed with the Clerk of the Court on December 2, 2002.  Petitioner did not file a notice of appeal or a request with the Clerk to have a notice of appeal filed on his behalf until June 14, 2006.  The Third Circuit summarily dismissed the appeal on May 21, 2007.  On July 23, 2007, Petitioner filed the present § 2255 motion.  On September 27, 2007, the Court executed a Notice and Order advising Petitioner of his rights and obligations pursuant to *United States v. Miller*, 197 F.3d 44 (3d Cir. 1999).  Respondent opposed the motion.

Petitioner argues that (1) he is not time-barred by the statute of limitations provision of § 2255; (2) Congress does not have the authority to legislate against bank robberies under the

Commerce Clause and, therefore, the Court lacks Article III jurisdiction; and, (3) the double jeopardy clause precludes the Court from accepting a guilty plea to a superseding information after the jury had been empaneled and sworn-in pursuant to a grand jury indictment.  Having reviewed the parties' submissions, the Court now decides the motion.

## II.    Legal Discussion

### A.  The § 2255 Standard

A prisoner in federal custody may file a motion challenging the lawfulness of his sentence.  28 U.S.C. § 2255.  A prisoner has been unlawfully sentenced if his sentence "(1) was imposed in violation of the Constitution or laws of the United States; (2) was imposed by a court lacking jurisdiction; (3) was in excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack."  28 U.S.C. § 2255.  To establish a right to habeas corpus relief, a prisoner must demonstrate that the sentence has a "fundamental defect" resulting in "a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  *Morelli v. United States*, 284 F. Supp. 454, 458-59 (D.N.J. 2003) (internal citations omitted).  The Court must construe the *pro se* motion liberally, as "allegations of the *pro se* complaint...[are held] to less stringent standards than formal pleadings drafted by lawyers...."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### B.  Statute of Limitations on § 2255 Motions

Section 2255 was enacted as part of the Antiterrorism and Effective Death Penalty Act of

3

1996 ("AEDPA"), which was signed into law on April 24, 1996.  Under § 2255, a defendant is permitted to collaterally attack both his conviction and sentence.  *See McFarland v. Scott*, 512 U.S. 849, 859 (1994) ("Criminal defendants are entitled by federal law to challenge their conviction and sentence in habeas corpus proceedings").  This right, however,  is subject to a statute of limitations.  *See Miller v. N.J. Dep't of Corrections*, 145 F.3d 616, 619 n.1 (3d Cir. 1998) (holding the one-year requirement for bringing a motion under § 2255 is a statute of limitations subject to equitable tolling, not a jurisdictional bar).  This limitation period comports with the statute's purpose, which is to speed up the habeas process and curb abuse of it "while retaining judicial discretion to equitably toll in extraordinary circumstances." *Miller*, 145 F.3d at 618.

   The pertinent part of the statute, stipulating the limitation period, suggests four possible benchmarks from which to begin the statute of limitations.  The Court finds the first benchmark to be applicable to Petitioner's motion.  The statute provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of -- (1) the date on which the judgment of conviction becomes final....

28 U.S.C. § 2255(f).  Therefore, the Court will apply the statute of limitations from the date on which Petitioner's conviction became final.

   Neither the AEDPA, nor § 2255, defines when a judgment of conviction becomes "final." *See* 28 U.S.C. § 2255; *see also Kapral v. United States*, 973 F. Supp. 495, 497 (D.N.J. 1997) ("While § 2255 time bars any motion filed more than one year after the final judgment of conviction, it does not expressly define when a judgment of conviction becomes final") (internal citations omitted).  The courts, however, have identified several possible dates on which a

4

judgment of conviction may be deemed "final" for purposes of § 2255.  *Fadayiro v. United States*, 30 F. Supp. 2d 772, 776 (D.N.J. 1998).  These dates include:

> (1) the date on which the trial court enters a judgment and sentence, (2) the date after which the petitioner could no longer file an appeal with the Circuit court, if no appeal was filed, (3) the date of the decision of the Circuit court, if an appeal was filed, and (4) the date after which the petitioner could no longer petition the Supreme Court for a writ of certiorari or denial of such petition.

*Id.*, 30 F. Supp. 2d at 776 (internal citations omitted).

The Court finds that the second standard is most applicable and deems the conviction to become "final" at the close of the appeal period following the sentencing.  *See United States v. Benson*, No. 97-4783, 1998 U.S. Dist. LEXIS 217, at *3 (E.D. Pa. 1998) (determining that because "Benson did not file an appeal of his sentence...the date on which his judgment of sentence became final was at the close of the appeal period after his sentencing").

In this case, Petitioner was sentenced on November 18, 2002.  Petitioner had ten business days, or until December 2, 2002, within which to file a notice of appeal pursuant to Fed. R. App. P. 4(b)(1).  Petitioner failed to file any such notice within the prescribed time frame; therefore, the Court's judgment became final on December 3, 2002.  Accordingly, Petitioner's § 2255 motion was required to be filed no later than one year from that date, December 3, 2003.  Petitioner did not file his § 2255 motion until July 18, 2007, approximately three and a half years late.

Petitioner contends that the "judgment of conviction does not become 'final' until the time for seeking certiorari review expires."  Petr. Resp. 1.  Typically, a defendant has ninety days from the date on which the Court of Appeals affirms the judgment of conviction to file a motion for a writ of certiorari, and only when the time for seeking certiorari review has expired does §

2255's statute of limitations begin.  *See Kapral v. United States*, 166 F.3d 565, 571 (3d Cir. 1999) (holding appellant's judgment of conviction became final under 28 U.S.C. § 2255 on the date upon which the time for filing a petition for certiorari review expired and not upon the date his conviction was affirmed by the appellate court).  Had Petitioner submitted a timely appeal to the Third Circuit, the ninety-day tolling period following the Third Circuit's decision would have applied.  Petitioner, however, failed to file a timely appeal to the Third Circuit and, as a result, he has no right to the ninety-day tolling period.  Therefore, Petitioner is time-barred from filing a § 2255 petition.

### a.    Equitable Tolling

It has been established by the Third Circuit that because § 2255's one-year period for filing a motion is analogous to a statute of limitations, it is within judicial discretion to equitably toll the statute of limitations under extraordinary circumstances.  *See Miller*, 145 F.3d at 618 (remanding to district court for consideration of an equitable tolling issue when prisoner claimed the tardiness of his habeas motion was a result of being in transit between various institutions, his lack of access to his legal documents, and his failure to learn of new limitation period until shortly before it expired).  Equitable tolling is proper only "when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.'"  *Shendock v. Director, Office of Workers' Compensation Programs*, 893 F.2d 1458, 1462 (3d Cir. 1990).  Generally, this will occur when the petitioner has "in some extraordinary way...been prevented from asserting his or her rights."  *Miller*, 145 F.3d at 618 (internal citations omitted).

The Third Circuit has found that equitable tolling is appropriate in four narrow

circumstances.

> (1) if the defendant has actively misled the plaintiff; (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights; (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum; (4) if the claimant received inadequate notice of his right to file suit, a motion for appointment of counsel is pending, or where the court has misled the plaintiff into believing that he had done everything required of him.

*Holbrook v. Folino*, No. 03-6841, 2004 U.S. Dist. LEXIS 10525, at *7 (E.D. Pa. 2004).

Moreover, a petitioner must show that he "exercised reasonable diligence in investigating and

bringing [the] claims." *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1126 (3d

Cir. 1997). "Mere excusable neglect is not sufficient." *Id.* at 619 (internal citations omitted).

Petitioner argues he should be granted equitable tolling to excuse the tardiness of his §

2255 motion because the Court incorrectly informed him he had waived his appeal rights during

his sentencing. Petr. Resp. 2-4. For Petitioner to contend that the Court incorrectly misled him

about his appeal rights is a gross misconstruction of his plea transcripts, sentencing proceedings,

and terms of his plea agreement. The Court informed Petitioner on numerous occasions that he

was waiving his appeal rights with respect to his sentence only. Gov. Ex. 1, 19:12-21; Gov. Ex.

7, 32:20-25. Petitioner signed his plea agreement with the assistance of counsel, which also

stipulated the appeal limitation. Gov. Ex. 6:3, 5. Furthermore, Petitioner's motion does not

challenge his sentence, but rather the substantive law under which he was convicted. Thus,

Petitioner's failure to bring such challenges in a timely fashion is simply a result of his failure to

exercise due diligence and, as a result, equitable tolling is inappropriate.

Assuming *arguendo* that Petitioner's motion was not barred by § 2255's statute of

limitations provision, however, the Court will address the merits of his petition.

7

### C.  The United States' Authority to Prosecute Bank Robbery

#### a.  Congressional Power to Legislate

Congress' power to regulate under the Commerce Clause is limited to three broad categories:

> (1) Congress may regulate the use of the channels of interstate commerce; (2) Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; (3) Congress' commerce authority includes the power to regulate those activities having substantial relation to interstate commerce.

*United States v. Watts*, 256 F.3d 630 (7th Cir. 2001) (quoting *United States v. Lopez*, 514 U.S. 549, 558-59 (1995)).  Petitioner argues that the government exceeded its Commerce Clause power by enacting 18 U.S.C. § 2113, the federal armed bank robbery statute.  Petr. Resp. pg. 5-7. Petitioner relies on *Lopez* and *United States v. Morrison*, 529 U.S. 598 (2000).[1]  In both cases, the Supreme Court found the government could not prosecute the defendants.  The Supreme Court reasoned that by enacting the laws, pursuant to which the defendants were prosecuted for violating, Congress exceeded its power under the Commerce Clause.  The Supreme Court explained that to infer an effect of the enacted laws on interstate commerce would "convert Congressional authority under the Commerce Clause to a general police power of the sort retained by the States."  *Lopez*, 514 U.S. at 567.

Although Congress's Commerce Clause power is limited, courts have recognized that 18

---

[1] In *Lopez*, the Court rejected the speculative effects of school-zone possession of guns on interstate commerce.  The statute "neither regulated a commercial activity nor contained a requirement that possession be connected in any way to interstate commerce."  *Lopez*, 514 U.S. at 551.  In *Morrison*, the Court struck down the civil remedy provision of the Violence Against Women Act (VAWA) after rejecting the similarly-speculative effects of gender-motivated violence on interstate commerce.

U.S.C. § 2113 withstands a *Lopez-Morrison* Commerce Clause attack.  The Seventh Circuit in *Watts* used the first and second prongs of the *Lopez* test to hold that Congress had the power to enact § 2113.  The court held that even though Federal Deposit Insurance Corporation ("FDIC") coverage did not extend to robberies, the "FDIC-insured banks are fundamental to the conduct of interstate commerce."  *Watts*, 256 F.3d at 633.  The Seventh Circuit concluded that those financial institutions are "at the very least...instrumentalities and channels of interstate commerce and [therefore] their protection from robbery is well within Congress's Commerce Clause power."  *Id.* at 634.

Similarly, in *United States v. Spinello*, 265 F.3d 150, 156-57 (3d Cir. 2001), the Third Circuit found that even if a bank robbery was not considered an "economic activity" in and of itself, § 2113 contains an express jurisdictional element limiting its application to banks that are "members of the Federal Reserve System or...organized under the laws of the United States or an institution whose deposits are insured by the [FDIC]."  *Spinello*, 265 F.3d at 155.  *See also* 18 U.S.C. § 2113(f) (defining a "bank" as "any member bank of the Federal Reserve System, and any bank...organized or operating under the laws of the United States....").  The court concluded "that the jurisdictional element in § 2113 ensures that bank robbery substantially affects interstate commerce."  *Spinello*, 265 F.3d at 155.

The *Spinello* court also reasoned that even if the jurisdictional element in § 2113 "had been found wanting, the statute would, nonetheless, survive a Commerce Clause challenge because intrastate bank robbery 'substantially affects' interstate commerce."  *Id.*  The court explained that bank robbery was an "economic activity" of sorts, as it is motivated by the robber's financial gain, and "bank robbery has immediate, non-collateral, non-speculative effects

9

on interstate commerce." *Id.* at 156.  Banks hold the deposits of, and make loans to, "companies, other entities, and individuals, who are engaged in interstate commerce, and who depend on these assets to conduct their interstate business." *Id.*  Further, the banks themselves are engaged in interstate commerce through their deposits and financial services and are "integral, indispensable parts of a large complicated financial web that is employed every day to move money across the nation and around the globe." *Id.* at 156-57.  Unlike the highly-inferential justifications rejected by the Court in *Lopez* and *Morrison*, there is no need to "pile inference upon inference" to manufacture an effect of bank robberies upon commerce.  *Lopez*, 514 U.S. at 567.  Therefore, the Court finds that Congress did not exceed its Commerce Clause power in enacting 18 U.S.C. § 2113 and, thus, the government could prosecute Petitioner for violating the statute.

### b.   Article III Jurisdiction of the Court

Article III of the Constitution provides:

"The judicial power of the United States, shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish...[And] shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority...."

U.S. CONST. art. III § 1, 2.  As previously established, Congress had the power, under the Commerce Clause, to enact 18 U.S.C. § 2113.  Because the Court finds that Congress did not invade powers exclusively reserved to the states by the Constitution when it enacted 18 U.S.C. § 2113, Congress can properly grant jurisdiction to the federal courts to adjudicate cases "arising under" this law of the United States.  Therefore, Petitioner's contention that the District Court lacked jurisdiction over his case is wholly without merit.  Petr. Resp 7-10.

10

### D.  Double Jeopardy

The Double Jeopardy clause of the Fifth Amendment provides "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V. The Double Jeopardy clause "affords a defendant three basic protections: [It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  *United States v. Console*, 13 F.3d 641, 663 (3d Cir. 1993) (quoting *Ohio v. Johnson*, 467 U.S. 493, 498 (1984)).

Petitioner contends that his trial, based on the superseding indictment, and his guilty plea, based on the superseding information, were two separate and distinct proceedings and, therefore, violated the protections of the Double Jeopardy clause.  Petr. Resp. 10-15.  The record demonstrates that after the jury was sworn-in and the government presented evidence, the parties reached a plea agreement.  Petitioner, fully-informed of his rights, waived his right to continue by trial and, instead, pled guilty to a superseding information.  Gov. Ex. 1 and 3.  Petitioner was fully aware of his constitutional right to continue by means of trial, and he did not have any obligation to plead guilty.  Gov. Ex. 1, 7:12-16.  The record also indicates that, after the Court accepted Petitioner's guilty plea, the jurors were dismissed.  Gov. Ex. 1, 26-28.   Thus, the factual determination of Petitioner's guilt was conducted through a singular proceeding.

### III.    Conclusion

For the reasons stated above, it is therefore the finding of the Court that Petitioner's

motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is time-barred.

Therefore, Petitioner's § 2255 motion is denied.  An appropriate order follows.


/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.


Dated: August 25, 2008